UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMON LOWES and SHIRLEY LOWES, | No. 04-4854 SC |
| Plaintiffs, | |
| v. | ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT |
| HILL & CO. REAL ESTATE, FIRST REPUBLIC BANK, ROBERT CRONHOLM, ROBERT McLEOD AND SIDDNEY McLEOD, | |
| Defendants. | |

**I.   INTRODUCTION**

Plaintiffs Simon and Shirley Lowes ("Plaintiffs" or the "Loweses") originally brought this action in the Superior Court for the County of San Francisco against Hill & Co. Real Estate ("Hill & Co."), First Republic Bank ("First Republic" or the "Bank"), Robert Cronholm ("Cronholm"), and Robert and Siddney McLeod (the "McLeods"; collectively, "Defendants"), alleging that Defendants' misrepresentation with respect to the appraised value of real property located at 2415-2419 Divisadero St., San Francisco, California ("Divisadero St. Property"), caused Plaintiffs to overpay for the Divisadero St. Property when they purchased the property in September 2003.  Plaintiffs further assert a cause of action for a violation of the Federal Equal Credit Opportunity Act, 15 U.S.C. § 1691 et seq., against First Republic only, and it is this claim that served as the basis for First Republic's removal of the action to this Court on

**United States District Court**
For the Northern District of California

November 15, 2004.  Each Defendant has filed a motion for summary judgment, and Plaintiffs have opposed the motions in a single opposition.  For the reasons set forth herein, Defendants' motions are hereby GRANTED and Judgment is ENTERED in their favor.

**II.   <u>BACKGROUND</u>**

This action centers on the nature and substance of representations made to purchasers of real property - the Loweses - by various individuals involved in facilitating that purchase in September 2003.

After living abroad for 18 years, Plaintiffs returned to the San Francisco Bay Area and sought to purchase a home.  <u>See</u> Plaintiffs' Memorandum in Support of Opposition to Defendants' Motion for Summary Judgment at 4 ("Pls.' Mem.").  After determining which San Francisco neighborhoods might suit their needs, Plaintiffs visited the Divisadero St. Property in late August 2003.  <u>Id</u>.  At that time, the owners of the Divisadero St. Property - the McLeods - had put the property up for sale at a then-reduced asking price of $1.65 million.  <u>Id</u>.  In connection with their attempt to sell the Divisadero St. Property, the McLeods employed Cronholm as their realtor, who was affiliated with Defendant Hill & Co. Real Estate.  <u>See</u> Declaration of Robert McLeod ¶ 2("McLeod Decl.").

While the McLeods were trying to sell the Divisadero St. Property, they were simultaneously involved in the purchase of another property, located on Lombard St. in San Francisco ("Lombard St. Property").  <u>Id</u>. ¶¶ 9-10.  In connection with the purchase of the Lombard St. Property, the McLeods applied for a

2

"bridge loan" from First Republic, which was secured by the Divisadero St. Property, even though that property was for sale at that time.  *Id*. ¶ 10, Exhibit A & B ("Ex.").  In completing the loan application for First Republic, the McLeods estimated, in May 2003, that the Divisadero St. Property was worth $1.75 million. *Id*. Ex. A.  After receiving the McLeods' application, Stefani Phipps, the loan officer at First Republic responsible for handling the McLeods' application, prepared a typed version of the original application and returned it to the McLeods for their signatures.  *Id*. Ex. B.  While the vast majority of information originally supplied by the McLeods was transcribed verbatim onto the typewritten loan application, Ms. Phipps did revise downward – to $1.6 million – the estimated value of the Divisadero St. Property.  *Id*.

The McLeods were accompanied by Cronholm at the closing of the Lombard St. Property.  *Id*. ¶ 15; Deposition of Robert Cronholm at 39:4-17 ("Cronholm Depo.").  During the course of signing the loan documents, Mr. McLeod arrived at a section of the document package that evidently contained private financial information, and at that point he asked Cronholm to refrain from looking on as Mr. McLeod continued reviewing and signing the documents.  *Id*.  It was at that point that Mr. McLeod noticed that First Republic had valued the Divisadero St. Property at $1.6 million, a fact that he apparently orally related to Cronholm.  *See id*. at 39:4-17; McLeod Decl. ¶ 15.  That valuation evidently comported with Cronholm's own independent understanding of the value of the property, as Cronholm asserts that prior to listing the property in May 2003 he

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

undertook his own evaluation of the Divisadero St. Property's value by examining the price per square foot recently paid for residences in Pacific Heights as well as in the Cow Hollow and Marina neighborhoods of San Francisco. See Cronholm Decl. ¶¶ 7-10. According to Cronholm, those analyses yielded estimates for the value of the Divisadero St. Property between $1.293 million and $2.473 million, depending on the neighborhood. Id. Finally, Cronholm also asserts that he solicited opinions from colleagues with respect to the value of the Divisadero St. Property and received in return estimates ranging from $1.55 million to $1.995 million. Id. ¶ 11. Plaintiffs do not contest either the fact of these analyses or their purported results.

However, the official appraisal that had been commissioned by First Republic in connection with the bridge loan did not affix a value of $1.6 million to the Divisadero St. Property. Rather, on May 13, 2003, the firm of Churton & Associates submitted an official appraisal on the Divisadero St. Property that estimated the value of the property at $1.45 million. See Declaration of Stefani Phipps, Ex. A ("Phipps Decl."). That appraisal had been commissioned by Ms. Phipps in connection with the McLeods' application for the bridge loan, and represented a sufficiently high value to satisfy First Republic's internal underwriting guidelines for the loan sought by the McLeods. Id. ¶6. No other official appraisal was carried out in connection with either the McLeods' bridge loan or Plaintiffs' loan from First Republic.

When Mrs. Lowes came to visit the Divisadero St. Property in late August 2003, she encountered Cronholm and inquired as to the

4

price range at which the McLeods might be willing to sell their property.  At that point, the asking price for the Divisadero St. Property was listed at $1.65 million.  See McLeod Decl. Ex. C. During the course of the initial meeting between Cronholm and Mrs. Lowes, and in the context of responding to Mrs. Lowes's inquiry into what price the sellers might ultimately accept, Cronholm noted that the Divisadero St. Property had recently been appraised at $1.6 million.  See Deposition of Simon Lowes at 23:6-9 ("Simon Lowes Depo."); Pls.' Mem. at 4; Declaration of Shirley Lowes ¶ 3 ("Shirley Lowes Decl.").

Negotiations between the Loweses and the McLeods began soon thereafter, and the parties eventually settled on a purchase price of $1.575 million.  See Pls.' Mem. at 5.  During the entire transaction, Plaintiffs were represented by a licensed real estate agent, Mary Toboni ("Toboni"), and her assistant, Wendy Soderborg ("Soderborg"), who were in communication with Cronholm regarding the status of the negotiations.  See Declaration of Mary Toboni ¶ 6; ("Toboni Decl."); Declaration of Wendy Soderborg ¶ 4 ("Soderborg Decl.").  During one of these conversations, Cronholm evidently noted to Ms. Toboni that the McLeods were unwilling to sell the Divisadero St. Property for less than $1.6 million, because that was the property's appraised value.  See Cronholm Depo. at 54:2-10, 55:2-55:18.

As the negotiations between the Loweses and McLeods were proceeding, Plaintiffs sought to secure a loan from First Republic.  Their inquiries in this respect were directed to Ms. Phipps, who worked with Plaintiffs to obtain approval for a loan

United States District Court
For the Northern District of California

in the amount of approximately $800,000.00.  See Phipps Decl. ¶¶ 10-13.  Although Ms. Phipps and Mr. Lowes have differing recollections as to who first suggested that the official Churton & Associates appraisal be used in connection with the Loweses' loan application, compare id. ¶ 13 with Simon Lowes Decl. ¶ 5, the parties generally agree that First Republic saw no problem with using the appraisal that had been commissioned in May 2003 in connection with the McLeods' bridge loan.  Id.

This arrangement was satisfactory to First Republic because the official appraised value of the Divisadero St. Property - $1.45 million - was "more than ample for the loan amount," and was convenient for Plaintiffs in that they saved the cost of commissioning a new appraisal, approximately $700.00.  See Phipps Decl. ¶ 13; Simon Lowes Decl. ¶ 5.  Plaintiffs do not assert that Ms. Phipps or any other agent or representative of First Republic ever informed them directly that the amount of the appraisal was $1.6 million.  Rather, the only representation from First Republic to Plaintiffs or their agents allegedly communicating that the official appraisal on the Divisadero St. Property had come in at $1.6 million was from Ms. Phipps to Ms. Soderborg in a conversation that apparently took place on September 22, 2003.  See Deposition of Wendy Soderborg at 50:8-9 ("Soderborg Depo."); Toboni Decl. ¶ 9.  However, Ms. Phipps maintains that she was never asked by Plaintiffs or their representatives about the actual value of the appraisal, see Phipps Decl. ¶¶ 13, 22, 24, and Ms. Soderborg does not recall whether she relayed the alleged $1.6 million appraisal figure to Ms. Toboni after her conversation.

United States District Court
For the Northern District of California

See Soderborg Depo. at 89:10-18.  Furthermore, Ms. Soderborg did not inform Plaintiffs about the appraisal value allegedly communicated to her in her conversation with Ms. Phipps until after the close of escrow in November 2003.  Id. at 50:17-51:3.

Plaintiffs did ask First Republic for a copy of the official appraisal prior to the close of the transaction, and Ms. Phipps maintains that a copy was included in the package of documents forwarded to the title company for execution at the closing.  See Phipps Depo. 42:9-25.  However, after the parties realized that the entity designated as the intended title holder of the Divisadero St. Property - the Lowes family trust - could not hold title without execution of the documents by both Mr. and Mrs. Lowes, an occurence that was not possible at the time due to Mr. Lowes's travel schedule, the closing documents were returned to First Republic for appropriate changes.  Ms. Phipps asserts that she is not aware that the title company returned the appraisal to Frist Republic along with the other documents and is not aware of any reason the title company did not maintain a copy of the appraisal in their files.  See Phipps Decl. ¶¶ 17-18.  In any event, when the time came for Mrs. Lowes to execute the revised closing documents, the appraisal was not included in the document package.  Whether this was due to an error on the part of First Republic or the title company is unknown.  While the absence of the appraisal was of concern to Mrs. Lowes, she was evidently convinced by Ms. Toboni and Ms. Soderborg to continue signing the closing documents.  Mrs. Lowes also asserts that the consistent assumptions by all involved in the transaction that the official

appraisal was for $1.6 million helped convince her that she should continue with the closing despite the fact that neither she nor her husband had seen the appraisal.  <u>See</u> Shirley Lowes Depo. at 40:10-41:8.

Several weeks after the closing, Plaintiffs received a copy of the official appraisal listing the Divisadero St. Property at a value of $1.45 million.  Plainitffs assert that, had they known the actual amount of the official appraisal, they would not have agreed to a sale price of $1.575 million, and that they have consequently suffered damages in the amount of $125,000.00.[1]

The discovery cutoff has since passed and the matter is scheduled to go to trial beginning March 10, 2006.

**III.  <u>LEGAL STANDARD</u>**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact**."**  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  A genuine issue of fact exists when the non-moving party produces evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252-56 (1986).

However, the adverse party may not rest upon the mere allegations or denials of his or her pleadings, and rather must

---

[1] Plaintiffs originally asserted that they had suffered compensable mental anguish and suffering, but have since dropped that basis for relief.

**United States District Court**
For the Northern District of California

present admissible evidence showing there is a genuine issue for

trial.  See Brinson v. Linda Rose Joint Venture, 53 F.3d 1044,

1049 (9th Cir. 1995).  Summary judgment is therefore appropriate

against a party "who fails to make a showing sufficient to

establish the existence of an element essential to the party's

case, and on which that party will bear the burden of proof at

trial."  Celotex 477 U.S. at 322-23.  The more implausible the

claim or defense asserted by the opposing party, the more

persuasive its evidence must be to avoid summary judgment, see

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S.

574, 587 (1986), but "[t]he evidence of the non-moving party is to

be believed, and all justifiable inferences are to be drawn in its

favor."  Anderson, 477 U.S. at 255.

**IV.   DISCUSSION**

Plaintiffs have asserted a claim of misrepresentation against

all Defendants.  Under California law, a cause of action for

misrepresentation can be of either the intentional or negligent

sort, however, both are considered types of deceit.  See Cal.

Civil Code §§ 1709, 1710.  Because the parties in this case have

largely cited authority concerning negligent misrepresentation,

and because all seem to assume that it is under this theory that

Plaintiffs proceed, the Court will analyze Plaintiffs' claim

against the elements of negligent misrepresentation.[2]  To prevail

---

[2] The Court notes, however, that the result reached would not be different even if Plaintiffs pursued their claim under a theory of intentional misrepresentation, because that cause of action requires proof that the defendant made a representation that he or she knew to be untrue, whereas claims for negligent misrepresentation require only that the plaintiff prove that the

United States District Court
For the Northern District of California

on a claim for negligent misrepresentation under California law, a plaintiff must prove that (1) defendant made a representation as to a past or existing material fact; (2) the representation was untrue; (3) the defendant made the representation without any reasonable ground for believing it to be true; (4) the representation was made with the intent to induce plaintiff to rely on it; (5) the plaintiff was unaware of the falsity of the representation and justifiably acted in reliance on the truth of the representation; (6) as a result of the plaintiff's reliance on the truth of the representation, plaintiff suffered damages. <u>See</u> 6 Witkin Summary of California Law, Torts § 818 (10th Ed. 2005). Plaintiffs' second claim for violation of the Federal Equal Credit Opportunity Act is asserted against First Republic only.

A.   <u>Plaintiffs' Claim Against Robert Cronholm</u>

In support of his motion for summary judgment, Cronholm makes three main arguments.  First, Cronholm argues that Plaintiffs have suffered no damages, because the fair market value of the property received was commensurate with the price paid.  <u>See</u> Defendant Cronholm's Memorandum in Support of Motion for Summary Judgment at 9-11 ("Cronholm Mem.").  Second, Cronholm contends that the claim against him must fail because Plaintiffs cannot demonstrate that he did not have a reasonable basis for making his representation that the property had been appraised at $1.6 million.  <u>Id</u>. at 12-13.  Finally, Cronholm argues that Plaintiffs cannot prove that

defendant's representation was made without any reasonable ground for believing it to be true.  <u>See</u> 6 Witkin Summary of California Law, Torts §§ 767, 818 (10th Ed. 2005).

**United States District Court**
For the Northern District of California

their alleged reliance on Cronholm's representations was reasonable because they were represented by a licensed realtor and her assistant, and because the information regarding the value of the Divisadero St. Property was equally available to both buyer and seller.  <u>Id</u>. at 14-15.

In response, Plaintiffs dispute the contention that the price paid can be an acceptable measure of fair market value when the transaction was marred by fraudulent conduct.  <u>See</u> Pls.' Mem. at 20-21.  Furthermore, Plaintiffs argue that Cronholm cannot establish as a matter of law that his representations rested on a reasonable, if erroneous, basis.  <u>Id</u>. at 21-22.  Finally, Plaintiffs contend that the misrepresentation need not be the predominant factor in inducing reliance, but rather is actionable so long as it is a substantial factor.  <u>Id</u>. at 23.

The Court finds that Plaintiffs have failed to present any evidence tending to establish the existence of a genuine issue of material fact as to the question of whether Cronholm had a reasonable basis for his representation.  In their opposition to Cronholm's motion for summary judgment, Plaintiffs' entire argument on this point is as follows:

> Cronholm cannot establish as a matter of law that his representation innocent [<u>sic</u>].  Cronholm's factual basis that he had a "reasonable basis" is suspect, and plaintiffs have produced evidence to test such a contention. How could Cronholm honestly believe that an appraisal determination, being reviewed by Mr. McLeod, was privileged so that he could not review. [<u>sic</u>]  Mr. Cronholm had information from Ms. Phipps, prior to the meeting where Mr. McLeod started the misrepresentation, that she was altering the estimate of value, and therefore Mr. Cronholm was on notice that the loan documents were based on Ms. Phipps [<u>sic</u>] "questimate." [<u>sic</u>].

Pls.' Mem at 22.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1    Plaintiffs' argument on this point is flawed in several

2  respects.  Perhaps most significantly, it misstates the burdens

3  imposed on the plaintiff and defendant by assuming that it is

4  Cronholm's burden to prove that his representation had a

5  reasonable basis.  Rather, it is Plaintiffs' responsibility to

6  prove that Cronholm's representation had no reasonable basis as an

7  element of their case.  See Byrum v. Brand, 219 Cal. App. 3d 926

8  (Cal. Ct. App. 1990); Cal. Jury. Instr. Civil §12.45 (BAJI).

9  Although Plaintiffs are the non-moving party and thus are entitled

10  to have all reasonable inferences drawn in their favor, they will

11  not be able to defeat Cronholm's motion by relying simply on bald

12  assertions containing legal conclusions that contradict Cronholm's

13  arguments.  See Brinson, 53 F.3d at 1049.  Rather, Plaintiffs at

14  this stage must provide evidence that demonstrates the existence

15  of a genuine issue of material fact.  In this respect, Plaintiffs

16  have failed entirely.

17    First, Plaintiffs appear to argue that Cronholm's stated

18  understanding that a section of the bridge loan documents

19  contained private information is either unreasonable or

20  disingenuous.  See Pls.' Mem. at 22.  Notably, however, Plaintiffs

21  do not refer the Court to any evidence that would support such a

22  contention.  This stands in great contrast to the deposition

23  testimony of Mr. Cronholm that when Mr. McLeod came to a section

24  of the bridge loan documents containing personal financial

25  information, he asked Cronholm to avert his eyes.  See Cronholm

26  Depo. at 39:7-17; see also McLeod Depo. at 9:5-16.  It was only

27  then that Mr. McLeod mused out loud that the Divisadero St.

28

United States District Court
For the Northern District of California

Property had been valued at $1.6 million. See Cronholm Depo at

39:7-17; McLeod Depo. at 9:5-16.  While the Court must refrain

from crediting the testimony at this stage, it is the province of

the Court to examine what evidence the parties have relied on in

support of their arguments, and where evidence of the moving party

is uncontroverted, summary judgment may be appropriate.  See

Anderson, 477 U.S. at 250.

Plaintiffs' other attempt to create a factual issue for trial

on this point also falls short.  They assert, without reference to

the record, that Cronholm was on notice prior to the signing of

the bridge loan documents that Ms. Phipps would be revising

downward the value of the property.  However, even if that is

true, it does nothing to create a genuine issue of fact as to

whether Cronholm had a reasonable basis to believe his client's

statement with respect to the property's value.  Rather, it

appears to fortify Cronholm's position that he had a legitimate

and reasonable basis for believing that the property was valued at

$1.6 million, given that Ms. Phipps's statement, if any, would

have confirmed the property value later iterated by Mr. McLeod

when signing the bridge loan documents.

Where the record in this case is complete and reveals

multiple different bases on which Cronholm could have reasonably

believed that his representation was accurate, Plaintiffs can

avoid summary judgment only by referring the Court to a document,

answer to interrogatory, deposition, declaration, affidavit, or

other piece of admissible evidence that would tend to contradict

the substantial evidence marshaled by Cronholm in support of his

13

United States District Court
For the Northern District of California

position that he had a reasonable basis for his representation. See FRCP 56; Celotex Corp., 477 U.S. at 323-24.  "Evidence" within the meaning of FRCP 56 does not encompass rhetorical questions or blanket assertions containing legal conclusions unsupported by citations.  See Brinson, 53 F.3d at 1049.  Where, as here, Plaintiffs have not referred the Court to any evidence that would establish the existence of a material fact on an issue on which Plaintiffs will bear the burden of proof at trial, summary judgment in favor of the moving party is proper.  See Celotex 477 U.S. at 322-23.  Accordingly, Defendant Cronholm's motion is GRANTED and JUDGMENT entered in his favor.

B.   Plaintiffs' Claim Against Robert and Siddney McLeod

Plaintiffs do not allege that Defendants Robert and Siddney McLeod ever made any representation to them regarding the appraised value of the Divisadero St. Property.  Rather, the McLeods have been named as Defendants in this matter under the theory that as principals, the McLeods are responsible for the actions of their agent, in this case Cronholm.  See Pls.' Mem. at 24-25.  However, a principal will not be liable under an agency theory where the agent has been exonerated of any wrongdoing by virtue of having obtained judgment in his favor.  See Will v. Southern Pac. Co., 18 Cal. 2d 468, 472 (Cal. 1941).  Therefore, in light of this Court's discussion in part A, supra, Defendants Robert and Siddney McLeod's motion is hereby GRANTED and JUDGMENT entered in their favor.

C.   Plaintiffs' Claims Against First Republic

Plaintiffs bring claims against First Republic for negligent

14

misrepresentation and for violation of the Federal Equal Credit Opportunity Act.

i.   Negligent Misrepresentation

In their claim for negligent misrepresentation against First Republic, Plaintiffs contend that First Republic's alleged communication through Ms. Phipps to Plaintiffs' agent, Ms. Soderborg, that the Divisadero St. Property had been appraised for $1.6 million caused them damages by helping to convince them to pay more for the property than it was worth.  See Complaint ¶ 16 ("Compl.").

In support of its motion for summary judgment, First Republic makes several arguments.  The Bank initially argues that it is entitled to summary judgment because First Republic did not owe the Loweses a duty of care with respect to its appraisal of the Loweses' collateral for their loan.  See First Republic's Memorandum in Support of Motion for Summary Judgment at 11-12 ("First Republic Mem.").  Second, the Bank argues that Plaintiffs cannot prove that the Bank intended to induce Plaintiffs to rely on the Bank's representations.  Id.  Finally, First Republic argues that Plaintiffs cannot prove that they actually relied on any representation made by the bank.  Id.

In response, Plaintiffs contend that First Republic has missed the mark in its discussion of the Bank's duty with respect to preparation of the appraisal, and that the relevant authority governing Plaintiffs' claim shows that the Bank had a duty to accurately represent the substance of the appraisal, regardless of whether the Bank had any duty to competently prepare the

15

**United States District Court**
For the Northern District of California

appraisal. <u>See</u> Pls.' Mem. at 12-14. Second, Plaintiffs argue that First Republic's misrepresentation induced Plaintiffs to forego a second appraisal. <u>Id</u>. at 14-15. Plaintiffs do not contend in the argument section of their moving papers that First Republic intended to induce Plaintiffs' reliance, although Plaintiffs apparently attempt to identify an issue of fact with respect to this element in section III(B)(2) of their opposition. <u>See id</u>. at 10.

While First Republic has relied heavily in its moving papers on cases that discuss a lender's limited duty with respect to borrowers and the preparation of appraisals, those cases deal with claims for negligence rather than negligent misrepresentation. <u>See</u> <u>Nymark v. Heart Federal Savings & Loan</u>, 231 Cal. App. 3d 1089 (Cal. Ct. App. 1991); <u>Borel Bank & Trust Co. v. Aubain</u>, No. C-95-20538, 1995 WL 743724 (N.D. Cal. Nov. 30, 1995). Rather, the California Supreme Court has made clear that while a lender may not owe a borrower any duty of care in connection with the preparation of an appraisal of the borrower's collateral to be used for the lender's own purposes, that principle does not extend to shield a lender or other entity from liability for making a negligent misrepresentation concerning the substance of an appraisal. <u>See</u> <u>Bily v. Arthur Young & Co.</u>, 3 Cal. 4th 370 (Cal. 1992); <u>see also</u> <u>Byrum</u>, 219 Cal. App. 3d at 941. The court's decision in <u>Bily</u> set up the somewhat incongruent result where, as here, a lender would face no liability for the negligent preparation of an appraisal, yet could face liability for negligently misrepresenting the substance of the appraisal. <u>See</u>

United States District Court
For the Northern District of California

Bily, 3 Cal. 4th at 407-08; see also Soderberg v. McKinney, 44 Cal. App. 4th 1760 (Cal. Ct. App. 1996).  The cases cited by First Republic in this respect are therefore inapposite, and accordingly, the Court will analyze Plaintiffs' claim under the same framework that applied to Plaintiffs' claims for negligent misrepresentation against other defendants in this case.

As Plaintiffs themselves acknowledge, the claim of negligent misrepresentation requires a showing that the defendant intended to induce the plaintiff's reliance on the misrepresentation.  See Pls.' Mem. at 9-10; 6 Witkin Summary of California Law, Torts § 818 (10th Ed. 2005).  However, nothing in Plaintiffs' moving papers or evidence suggests that First Republic intended to induce Plaintiffs' reliance.  Even drawing all justifiable inferences in Plaintiffs' favor, the Court can find nothing that would even hint at the possibility that the Bank or Ms. Phipps intended to induce such reliance.

This stands to reason, as there was no incentive for the Bank to mislead Plaintiffs with respect to the value of the Divisadero St. Property.  Given that the May 2003 appraisal demonstrated more than adequate value in relation to the loan sought by Plaintiffs, the Bank was rightfully agnostic as to whether Plaintiffs ultimately obtained a second appraisal.  Plaintiffs have not asserted that the Bank stood to gain either financially or otherwise from inducing Plaintiffs to forego a second appraisal, and in fact, logic would suggest that, if anything, the Bank would have benefitted from encouraging Plaintiffs to seek an additional appraisal because of the goodwill garnered from directing

17

1   additional business to the Bank's appraiser.

2       Furthermore, Plaintiffs have not alleged, and nothing in the

3   evidence implies, that a higher sale price for the Divisadero St.

4   Property would have benefitted the Bank in any way.  However, the

5   Court recognizes that it is theoretically possible that First

6   Republic could have intended to induce Plaintiffs' reliance even

7   absent any potential benefit to the Bank.  But at this stage of

8   the proceedings, Plaintiffs must present the Court with some

9   evidence that would suggest that a triable issue of fact exists on

10  this point, and in that respect Plaintiffs have failed.  In fact,

11  on close examination, Plaintiffs' opposition is silent in this

12  respect, and after reviewing the entire record in this case, the

13  Court finds that discovery has yielded nothing that would, even

14  inferentially, suggest that First Republic intended to induce

15  Plaintiffs' reliance.  Accordingly, the Court finds that there is

16  no genuine issue of material fact on this point - one on which

17  Plaintiffs will ultimately bear the burden at trial - and

18  therefore finds that First Republic is entitled to summary

19  judgment on this claim.  First Republic's motion is therefore

20  GRANTED and JUDGMENT entered in its favor on this claim.

21          ii.  Federal Equal Credit Opportunity Act

22      Plaintiffs have also alleged that First Republic failed to

23  comply with the requirements of the Federal Equal Credit

24  Opportunity Act, 15 U.S.C. § 1691 et seq. ("FECOA"), and that this

25  failure caused Plaintiffs damages in an unnamed amount.  See

26  Compl. ¶¶ 23-26.  FECOA sets forth in broad-brush strokes general

27  provisions enacted to prevent discrimination in connection with

28

United States District Court
For the Northern District of California

applications for credit.  <u>See</u> 15 U.S.C. § 1691(a).  FECOA also requires that

> Each creditor shall promptly furnish an applicant, upon written request by the applicant made within a reasonable period of time of the application, a copy of the appraisal report used in connection with the applicant's application for a loan that is or would have been secured by a lien on residential real property. The creditor may require the applicant to reimburse the creditor for the cost of the appraisal.

15 U.S.C. § 1691(e).

Further regulations enacted pursuant to FECOA are set forth at 12 C.F.R. § 202.14, which directs that a creditor who does not routinely provide applicants with copies of the appraisal referred to in section 1691(e) must provide the applicant with written notice of his right to receive the appraisal, and must provide the appraisal upon written request of the applicant.  12 C.F.R. § 202.14(a)(2) & (a)(2)(i).  Furthermore, 12 C.F.R. § 202.14 (a)(2)(ii) directs that a "creditor shall mail or deliver a copy of the appraisal report promptly (generally within 30 days) after the creditor receives an applicant's request, receives the report, or receives reimbursement from the applicant for the report, whichever is last to occur."

Plaintiffs assert that First Republic violated FECOA and the relevant regulations by failing to provide Plaintiffs with proper notice of their right to receive the appraisal being used in connection with their loan.  Compl. ¶ 25.  While Plaintiffs acknowledge receiving a notice from First Republic advising them

United States District Court
For the Northern District of California

of their right to receive the appraisal used in connection with

their loan, Plaintiffs assert that the notice they received from

First Republic was misleading and did not comply with FECOA or the

regulations. <u>See</u> Pls.' Mem. at 15-17. This is so, Plaintiffs

claim, because the notice they received from the Bank read as

follows:

> With respect to the real estate loan you have applied for,
> please be advised that you have the right to receive, upon
> your request, a copy of the appraisal report we may obtain in
> connection with your application, provided that you have paid
> for the appraisal. If you wish a copy, please write to us at
> the mailing address set out below.

Declaration of Batya Swenson, Ex. H ("Swenson Decl.").

Because the notice provided by First Republic deviated from

the sample notice form set forth in 12 C.F.R. Supp. I Form C-9,

Plaintiffs argue, First Republic violated FECOA and is therefore

responsible for Plaintiffs' damages. <u>See</u> Pls.' Mem. at 16-17.

Plaintiffs also assert that even if First Republic's deviation

from the sample form was permissible under the regulations, it was

misleading because it conditioned the right to receive the

appraisal on receipt of payment, and in this case Ms. Phipps

allegedly informed Plaintiffs that the Bank would provide a copy

of the appraisal free of charge. <u>See</u> Pls.' Mem. at 17.

Even without reference to the fact that it remains unclear

whether the Loweses are able to bring a claim for damages for

failure to provide an appraisal under section 1691(e), <u>see</u>

<u>Wiltshire v. Dhanraj</u>, No. 03-CV-2856, 2005 WL 2239972 at *11 n. 11

20

United States District Court
For the Northern District of California

(E.D.N.Y. Sept. 14, 2005), the Court finds that the notice provided by the Bank was consistent with the actual requirements of FECOA and the regulations, and that any deviation from the sample notice form was expressly authorized.  First, the language of the statute requires only that an appraisal be provided "upon written request" and explicitly allows creditors to charge borrowers for the cost of providing the appraisal.  <u>See</u> § 1691(e). Nothing in 12 C.F.R. § 202.14(a)(2)(i) & (ii) alters these basic requirements in any way material to the instant case. Furthermore, although it is true that the notice form supplied by First Republic differed from the sample form set forth in 12 C.F.R. Supp. I Form C-9, such modifications are expressly allowed by 12 C.F.R. Pt. 202, Supp. I Appendix C, which provides that, with respect to the sample notice forms, "[c]reditors may design their own form, add to, or modify the model form to reflect their individual policies and procedures."  Simply put, Plaintiffs have not provided, and the Court is not aware of, any firm mandate set forth anywhere in FECOA or its regulations that controls the precise form of the notice supplied to persons seeking credit. Rather, the statute and its regulations seem to accord creditors a good deal of leeway in designing their notice forms, so long as certain basic pieces of information are supplied.[3]  The Court

---

[3] In addition to the foregoing, the statute also contains a "good faith exception," that provides "No provision of this subchapter imposing liability shall apply to any act done or

United States District Court
For the Northern District of California

finds that First Republic's notice form met that standard as a matter of law, and that Plaintiffs are therefore unable to make out a claim under FECOA.

Finally, Plaintiffs contend that even if the Bank's notice form was adequate, the signatures of Mr. and Mrs. Lowes acknowledging receipt of the notice constitute a written request for a copy of the appraisal. See Pls.' Mem. at 19. However, this argument completely belies the plain language of the notice - which expressly advised Plaintiffs of their right to receive a copy of the appraisal and described the procedure to be followed to obtain the appraisal - and the testimony of Mr. Lowes, who stated that he read and understood the notice. See Simon Lowes Depo. at 48:14-25. The Court therefore declines to construe Plaintiffs' signatures on First Republic's appraisal notice form as a written request for the appraisal.[4] Accordingly, the Court

omitted in good faith in conformity with any official rule, regulation, or interpretation thereof by the Board." 15 U.S.C. § 1691(e)e.

[4] The Court further notes that even if the Loweses' acknowledgment of receipt of the notice counted as a written request for the appraisal, which it does not, First Republic would only then have been under an obligation to "promptly" provide Plaintiffs with a copy of the appraisal, a time period that has been defined in the regulations as "generally within 30 days." Therefore, even under this strained understanding, First Republic would not have been under any obligation to provide the appraisal until well after the close of escrow, which occurred on or about October 2, 2003. The Court further notes that, while the parties dispute whether a copy of the appraisal was provided at the first scheduled closing, Plaintiffs acknowledge that they received a copy, free of charge, on October 31, 2003, approximately 42 days after Plaintiffs signed the appraisal notice form. See Shirley Lowes Decl. Ex 2.

**United States District Court**
For the Northern District of California

hereby GRANTS First Republic's motion with respect to this claim and enters JUDGMENT in its favor.

## V.    <u>CONCLUSION</u>

It is clear from the evidence gathered in this case that Plaintiffs placed great reliance on their understanding that the Divisadero St. Property had been officially appraised for $1.6 million four months prior to their purchase of the property. Without question, Defendants each played roles of varying degrees of significance in initiating or propagating this misrepresentation.  However, given the fact that, under California law, the tort of negligent misrepresentation is considered a species of deceit, recovery under this theory requires carrying the burden on several elements that can be difficult to prove. Not all misrepresentations that induce reliance are redressable, therefore, and where, as here, Plaintiffs fail to introduce evidence tending to create issues of fact on an element they will ultimately bear the burden of proving at trial, summary judgment is appropriate.  While it may be unfortunate that Plaintiffs feel they were duped or taken advantage of, this Court is powerless to fashion a remedy for them where essential elements of their case are lacking.  There is simply no genuine issue of material fact to be determined at trial, and as a matter of law, Defendants are entitled to judgment in their favor.

//

23

1    Accordingly, the Court hereby GRANTS Defendants' motions and

2  enters JUDGMENT in favor of Defendants and against Plaintiffs.

3

4  IT IS SO ORDERED.

5

6

7  Dated: February 23, 2006



UNITED STATES DISTRICT JUDGE